**ORAL ARGUMENT NOT SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF TEXAS, ET AL., ) | |
| ) | |
| PETITIONERS, ) | |
| ) | |
| ) | |
| v. ) | No. 10-1425 |
| ) | |
| UNITED STATES ENVIRON- ) | |
| MENTAL PROTECTION ) | |
| AGENCY, ) | |
| ) | |
| RESPONDENT. ) | |

**PETITIONERS' EMERGENCY MOTION
FOR A STAY PENDING REVIEW**

EPA is attempting to supplant Petitioners' ("Texas" or the "State of Texas") fundamental right under the Clean Air Act ("CAA") to implement Texas' approved State Implementation Plan ("SIP") because the State has insisted on asserting its full rights under the CAA and has sought judicial review of unlawful EPA actions. This morning, EPA published a lengthy "interim final rule," Att. A, revoking a considered decision the Agency made approving Texas' SIP eighteen years ago. EPA refused to put this rule up for notice and comment, although its justification for this extraordinary action is based on events that occurred no later than August 2, 2010, leaving nearly five months for notice and comment. Absent a stay, Texas will be irreparably harmed as a matter of law by EPA's injunction of its SIP. Texas respectfully requests that the Court require EPA to respond by 5:00 pm EST December 31, and stay EPA's action pending review by January 2, 2010.[1]

## BACKGROUND

## I. THE CAA IS SUPPOSED TO BE A PARTNERSHIP BETWEEN THE STATES AND FEDERAL GOVERNMENT

The CAA "establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals." *Natural Res. Def. Council, Inc. v. Browner*, 57 F.3d 1122, 1123 (D.C. Cir. 1995). "[A]ir pollution prevention . . . at its

---

[1] Texas learned yesterday that the Rule would be published in the *Federal Register* today. Texas immediately informed the Court and the Department of Justice that it would file an immediate motion to stay and would substantially request this briefing schedule. The State requested reconsideration and a stay of this action on December 23, 2010, Att. B, and renewed that request today, Att. C.

source is the primary responsibility of States and local governments. . . ." 42 U.S.C. § 7401(a)(3).  Congress "carefully balanced State and national interests by providing for a fair and open process in which State and local governments, and the people they represent, will be free to carry out the reasoned weighing of environmental and economic goals and needs."  H.R. Rep. No. 95-294, at 146 (1977).

Each State adopts laws, regulations, and enforcement standards for complying with the CAA's standards, and these are compiled into State Implementation Plans ("SIPs") subject to EPA's approval.  *See* 42 U.S.C. § 7410(a).  EPA must approve any submittal that "meets all of the applicable requirements" of the CAA.  42 U.S.C. § 741(k)(3).  Once approved, a SIP binds both the State and EPA, and remains valid even when the Agency alters its strategy for implementing the CAA.  *United States v. Cinergy Corp.*, 623 F.3d 455, 458 (7th Cir. 2010) (Posner, J.).  Therefore, "[t]he CAA does not authorize the imposition of sanctions for conduct that complies with a State Implementation Plan that the EPA has approved."  *Id.*

"[I]n the implementation of the [CAA], where the heaviest responsibilities rest upon state governments and where federalism concerns are implicated, the usefulness and desirability of the APA's notice-and-comment provision may be magnified." *New Jersey v. EPA*, 626 F.2d 1038, 1047 (D.C. Cir. 1980).  Public participation is an integral and **mandatory** part of the SIP process.  SIPs are developed by states pursuant to mandatory notice and comment requirements. *See* 42 U.S.C. §§ 7410(a)(2), -(l).  EPA then approves or disapproves submitted SIPs through a separate APA-mandated fed-

eral notice and comment rulemaking.  *See* 5 U.S.C. § 553; *see also* 42 U.S.C. § 7601.

EPA may regulate air quality in a State directly only through a Federal Implementation Plan ("FIP"), which "rescinds state authority to make the many sensitive technical and political choices that a pollution control regime demands."  *NRDC*, 57 F.3d at 1124.  But in relevant part, EPA may impose a FIP **only** where the Agency "disapproves a State implementation plan **submission** in whole or in part. . . ."  42 U.S.C. § 7410(c)(1) (emphasis added).

## II.     EPA APPROVED TEXAS' SIP IN 1992 KNOWING THAT IT DID NOT INCORPORATE BY REFERENCE NEW REQUIREMENTS, INCLUDING NEWLY-REGULATED POLLUTANTS

Texas has had an approved SIP in place since 1972.  *See* 37 Fed. Reg. 10,842, 10,895-98 (May 31, 1972).  After Congress created the statutory prevention of significant deterioration program ("PSD program") in the CAA Amendments of 1977, 95 Pub. L. No. 95-95, 91 Stat. 685, Texas submitted numerous SIP revisions to EPA to ensure its authority to implement the PSD program.  *See, e.g.*, Determinations Concerning Need for Error Correction, Partial Approval and Partial Disapproval, and Federal Implementation Plan Regarding Texas Prevention of Significant Deterioration Program, 75 Fed. Reg. 82,430, 82,438 (Dec. 30, 2010) ("Partial SIP Disapproval and FIP Rule").

Since that time, Texas has consistently taken the position that its PSD provisions are not "prospective rulemaking": they do not incorporate through general language future EPA reinterpretations of the Act or its regulations.  For example, in 1986, Tex-

3

as included a specific date in its PSD SIP to clarify that the content of its SIP pertaining to smokestack height requirements would not change with later interpretation of the Act.  75 Fed. Reg. at 82,438.  EPA not only had full knowledge of this action, but itself suggested that Texas put the date in its SIP.  *Id.*

Similarly, when EPA promulgated a new NAAQS for $PM_{10}$, Texas changed the applicability date in its SIP so that these substances would be regulated under the relevant SIP provisions.  75 Fed. Reg. at 82,438-39.  EPA then approved Texas' SIP on the understanding that it was not necessary to incorporate by reference later requirements:

> [T]he [Texas SIP] incorporates by reference the Federal PSD regulations (40 CFR 52.21) as **they existed on August 1, 1987**, which include revisions associated with the July 1, 1987, promulgation of revised National Ambient Air Quality Standards for particulate matter (52 FR 24872) and the visibility NSR requirements noted above.. . . .

52 Fed. Reg. 28,093, 28,094 (June 24, 1992).  EPA further acknowledged that "any fundamental changes in the administration of PSD would have to be accomplished through amendments to the regulations in 40 C.F.R. § 52.21 and 51.166, and subsequent SIP revisions."  *Id.*  EPA was clear that this meant that the State could implement its SIP according to its terms:

> The EPA did not intend to suggest that Texas is required to follow EPA's interpretations and guidance issued under the Act in the sense that those pronouncements have independent status as enforceable provisions of the Texas PSD SIP, such that mere failure to follow such pronouncements, standing alone, would constitute a violation of the Act. . . .

> . . . PSD-SIP approved states remain free to follow their own course, **provided that state action is consistent with the letter and spirit of the SIP**, when read in conjunction with the applicable statutory and regulatory provisions.

57 Fed. Reg. at 28,095 (emphasis added).

There can therefore be no question that EPA knew that the only PSD requirements in the SIP were those in place on the date listed in the rule. In this respect, Texas' law comports with that of other states, including Florida, Idaho, Kansas, and Oregon, each of which precludes incorporating new regulatory requirements by reference. *See, e.g.*, Fla. Sta. § 120.54(1)(i); Idaho Admin. Code r.58.01.01.107.03.d, Idaho Code § 67-5229(3); 77 Op. Att'y Gen. 379 (Kan. 1977); Or. Admin. R. § 340-200-0020(100). Any other course would "place in doubt the constitutionality of" the provision under the Texas Constitution's non-delegation doctrine. *See, e.g.*, *Ex parte Elliott*, 973 S.W.2d 737, 741 (Tex. Ct. App. 1998).

## III.  EPA MAKES GREENHOUSE GASES "SUBJECT TO REGULATION" UNDER THE CAA

Before 2007, EPA took the position that greenhouse gases ("GHGs") are not regulated under the CAA. In *Massachusetts v. EPA*, 549 U.S. 497 (2007), however, the Supreme Court ruled that EPA had statutory authority under the CAA to regulate GHGs. Rather than act expeditiously, EPA waited over two years to address GHGs under the CAA. Starting in late 2009, EPA promulgated four GHG related rulemakings: (1) an "endangerment finding" for GHGs emitted by light-duty motor vehicles,

74 Fed. Reg. 66,496 (Dec. 15, 2009) ("Endangerment Finding"); (2) a determination that imposition of the light-duty motor vehicle standards renders GHG "subject to regulation" under the PSD program, 75 Fed. Reg. 17,004 (Apr. 2, 2010) ("Timing Rule"); (3) Light-duty motor vehicle emission standards effective January 2, 2011, 75 Fed. Reg. 25,324 (May 7, 2010) ("Tailpipe Rule"); (4) a rule creating a new definition of "subject to regulation" that supersedes the CAA's statutory emission thresholds, 75 Fed. Reg. 31,514 (June 3, 2010) ("Tailoring Rule"). These rulemakings opened numerous legal issues for comment and review, including whether the PSD program includes non-NAAQS pollutants. *See, e.g.*, 75 Fed. Reg. at 82,437 n.11. Texas exercised its right under CAA § 307(b)(1) to petition for review of each of these actions, challenging EPA's new rules as inconsistent with the CAA. *See Coalition for Responsible Regulation, Inc. v. EPA*, No. 09-1322 (D.C. Cir.); *Coalition for Responsible Regulation, Inc. v. EPA*, No. 10-1073 (D.C. Cir.); *Coalition for Responsible Regulation, Inc. v. EPA*, No. 10-1092 (D.C. Cir.).[2]

## IV.   TEXAS ASSERTS ITS RIGHTS UNDER THE CAA TO CHALLENGE EPA'S UNLAWFUL ACTIONS

Despite the Supreme Court's ruling that EPA has significant discretion about GHG regulation under the CAA, and in contrast to the Agency's delay following *Massachusetts*, EPA took the position that GHGs are "subject to regulation" under the

---

[2] The Court denied Texas' and its co-petitioners' motions to stay these rules on December 10, 2010. Order, *Coalition for Responsible Regulation, Inc., v. EPA*, No. 09-1322 (and coordinated and consolidated cases) (D.C. Cir. Dec. 10, 2010).

PSD program starting on January 2, 2011. Timing Rule, 75 Fed. Reg. at 17,007. To further its GHG regulatory program, the Tailoring Rule asked States whether they could reinterpret their approved SIPs to incorporate the Agency's new definition of the term "subject to regulation." 75 Fed. Reg. at 31,583. In its August 2, 2010 reply, Texas noted that its PSD program "encompasses all 'federally regulated new source review pollutants,' including 'any pollutant that otherwise is subject to regulation under the [federal CAA.'" Letter from Attorney General Abbott and Chairman Shaw to Administrator Jackson and Regional Administrator Armendariz (Aug. 2, 2010), Att. D. at 2 (quoting 30 Tex. Admin. Code § 116.12(14)(D)). Texas explained that under its Constitution, this phrase was "limited solely to those pollutants regulated when Texas Rule 116.12 was adopted (1993) and last amended (2006)." *Id.* at 2. Texas further explained that the CAA's plain language "requires the EPA to promulgate a [NAAQS] . . . for greenhouse gases before the EPA can require PSD permitting of" them and asked EPA to stay its actions. *Id.* at 4-5.

Following promulgation of the Tailoring Rule and review of states' responses, EPA issued its proposed GHG SIP Call, which proposed a finding that thirteen States' SIPs, including Texas', were "substantially inadequate" to meet the CAA's requirements. *See* 75 Fed. Reg. 53,892, 53,899 (Sept. 2, 2010). EPA also proposed FIP that would apply specifically to Texas and the other twelve states subject to the SIP call if they did not meet SIP submission deadlines. *See* 75 Fed. Reg. 53,883 (Sept. 2, 2010). Texas was not required to submit its SIP revisions for twelve months under

EPA's proposed and final rule.  75 Fed. Reg. at 53,896; 75 Fed. Reg. at 77,705.  Neither action suggested that EPA would "correct" its approval of Texas' SIP, nor did either suggest that EPA would impose a FIP on Texas before December 2, 2011. Contemporaneous with these proposals, Assistant Administrator McCarthy offered an exhibit to **her sworn statement to this Court** averring a "FIP cannot be promulgated until December 2, 2011 at the earliest" for Texas.  Att 2 to Decl. of Regina McCarthy (Oct. 28, 2010), Att E.  This was Texas' shared understanding of the law.

## V.    EPA THREATENS TO SUPPLANT TEXAS' SIP THROUGH SOME UNNAMED REGULATORY MECHANISM

Notwithstanding EPA's recognition that the CAA requires EPA to allow Texas the opportunity to revise its SIP before the Agency may impose a FIP, EPA this month suggested for the first time in its final GHG SIP Call signed December 1, 2010 that it was "planning additional actions to ensure that GHG sources in Texas can be issued permits as of January 2, 2011."[3]  *See* 75 Fed. Reg. 77,698, 77,700, 77,711.  EPA described neither those "additional actions" nor their legal basis.

Directly contradicting her representations to the Court, on December 21, 2010, Assistant Administrator McCarthy wrote a letter to Chairman Shaw, threatening to disapprove Texas' SIP and impose a FIP.  *See* Letter from Gina McCarthy to Brian Shaw (Dec. 21, 2010), Att F..  Assistant Administrator McCarthy suggested that EPA

---

[3] Texas has petitioned for review of the GHG SIP Call in the United States Court of Appeals for the Fifth Circuit.  The Fifth Circuit denied Texas' motion to stay.  Order, *Texas v. EPA*, No. 10-60961 (5th Cir. Dec. 29, 2010).

would partially disapprove Texas' PSD program and impose a FIP but did not explain the purported legal basis of EPA's authority to do so without notice and comment. This letter was the first indication Texas had that EPA would seek to disapprove Texas' SIP in advance of the December 1, 2011 submittal deadline.

## VI.    EPA REVOKES FULL APPROVAL OF TEXAS' SIP

Today, December 30, EPA published an interim final rule partially disapproving Texas' SIP, imposing a FIP, and purporting to be effective as of December 23, 2010.  *See* 75 Fed. Reg. at 82,458.  EPA's lengthy submission was 183 pages in draft. *See* Att. G.  Despite its length, EPA has refused to submit the interim final rule or its legal basis for notice and comment.  Instead, EPA purports to rely on Administrative Procedure Act § 553(b)(3)(B)'s "good cause" exception, finding that notice and comment is "impracticable" and would be "contrary to the public interest."  75 Fed. Reg. at 82,458 (quoting 5 U.S.C. § 553(b)(3)(B)).  EPA also issued a companion notice requesting comment on this action.  *See* 75 Fed. Reg. 82,365 (Dec. 30, 2010).

EPA claims that CAA § 110(k)(6) authorizes the agency to correct its error "in fully approving Texas's PSD program in 1992 because at that time, the program . . . did not address its application to, or provide assurances that it has adequate legal authority to apply to, all pollutants newly subject to regulation, including non-NAAQS pollutants, among them GHGs."  75 Fed. Reg. at 82,431.  Alternatively, EPA finds that it has inherent authority to reconsider its 1992 decision approving Texas' SIP.  75 Fed. Reg. at 82,433.

9

## **ARGUMENT**

All four factors identified in D.C. Circuit Rule 18 favor a stay in this case.  Under D.C. Circuit Rule 18, a movant must satisfy four factors to obtain a stay pending review: "(i) the likelihood that the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest."  *See Washington Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977).  These factors must be "balanced against each other."  *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998).  "If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Texas is likely to prevail on the merits because EPA delayed "correcting" a decision it made **eighteen years ago** until the very last minute, and then claimed that it could not conduct notice and comment rulemaking because doing so would be impracticable.  EPA's actions are proof perfect why this Court prevents § 553(b)(3)(B)'s "good cause" exception from being used as an "escape clause[]' that may be arbitrarily utilized at the agency's whim."  *Am. Fed'n of Gov't Emps. v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981) ("*Block*").[4]

Second, EPA's action causes Texas irreparable injury.  Irreparable harm attaches

---

[4] Given the EPA's failure to notice this action, the State of Texas has not completed its analysis of the remainder of EPA's purported legal justifications.  Texas reserves the right seek further relief on other grounds, if appropriate.

"any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people." *New Motor Vehicles Bd. of California v. Orrin F. Fox*, 434 U.S. 1345 (1977) (opinion in chambers, Rehnquist, J.). EPA's action disapproving Texas' SIP and eliminating the State's ability to administer its own laws irreparably harms the State as of January 2, 2011, the date at which EPA's imposed FIP enters force.

Third, a stay would not harm third parties because it would allow sources in Texas to obtain PSD permits from the State in an orderly manner and would further Congress' statutory aim of governing agency proceedings under the rule of law. In light of these considerations, the public interest would clearly be served by a stay in this case.

## I. TEXAS IS LIKELY TO SUCCEED ON THE MERITS BECAUSE EPA'S FAILURE TO ENGAGE IN NOTICE-AND-COMMENT RULEMAKING VIOLATES THE APA

### A. Exceptions To The Notice-And-Comment Requirement Are To Be "Narrowly Construed And Only Reluctantly Countenanced"

There is no dispute that EPA's approval or disapproval of SIP is a legislative rule that is subject to the APA's mandate that the Agency engage in notice and comment rulemaking and "give interested persons an opportunity to participate" in the decision. 5 U.S.C. § 553. This process is not a mere formality, but is "one of Congress's most effective and enduring solutions to the central dilemma [of] reconciling the agencies' need to perform effectively with the necessity that 'the law must provide that the governors shall be governed and the regulators shall be regulated, if our present form of government is to endure.'" *Am. Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C. Cir.

1980) (quoting S. Doc. No. 248, 79th Cong., 2d Sess. 244 (1946)).

Despite the APA's broad mandate, EPA improperly attempts to rely on the APA's exclusion from notice and comment rulemaking "when the agency for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). EPA's attempt to rely on the good cause exception is not afforded *Chevron* deference. *E.g.*, *Reno-Sparks Indian Colony v. EPA*, 336 F.3d 899, 909 n.11 (9th Cir. 2003) ("The agency is not entitled to deference because complying with the notice and comment provisions when required by the APA is not a matter of agency choice."). To the contrary, the Court has repeatedly held that "the various exceptions to the notice-and-comment provisions of [the APA] will be narrowly construed and only reluctantly countenanced." *New Jersey v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980) (citing cases). *See also Utility Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001).

**B.** **EPA's Delay Forecloses Its Reliance On The "Good Cause" Exception**

EPA asserts two grounds for its invocation of the APA's "good cause" exception: that it was "impracticable" for the Agency to engage in notice and comment rulemaking, and that doing so would not serve the "public interest." EPA can support neither rationale—EPA has ignored the APA based on an emergency caused by the Agency's own delay. *E.g.*, *Envtl. Def. Fund v. EPA*, 716 F.2d 915, 921 (D.C. Cir. 1983) ("*EDF*") (good cause exception is inapplicable "where an alleged 'emergency' arises as the results of an agency's own delay").

12

EPA cannot reasonably claim that it has been unaware that Texas' SIP does not automatically incorporate new PSD requirements by reference.  It has known this since it approved the SIP nearly two decades ago.  EPA's very approval of the Texas SIP in 1992 stated clearly that "the [Texas SIP] incorporates by reference the Federal PSD regulations (40 CFR 52.21) as **they existed on August 1, 1987**" and did not include latter requirements.  *E.g.*,  52 Fed. Reg. 28,093, 28,094 (June 24, 1992); *see also supra* pp. 3-5

But even if the Court were to credit EPA's claims, the Agency was notified that Texas' SIP did not incorporate new pollutants by reference in Texas' August 2 letter, nearly six months ago.  During this period, EPA noticed and finalized **two separate notice-and-comment rulemakings on related issues during this time**.[5]  *See* 75 Fed. Reg. 77,697 (GHG SIP call); 75 Fed. Reg. 82,246 (FIP).  In one of these rules, which the Administrator signed nearly one month ago on December 1, EPA stated that it would supplant Texas' permitting authority—ostensibly through the instant action—but hid its legal rationale.  75 Fed. Reg. at 77,700.  If EPA intended to comply with the APA, it would have noticed this action by December 1 at the latest.

This Court is no stranger to an agency's (including EPA's) efforts to backfill their own failures by ignoring APA rulemaking requirements.  *See, e.g.*, *EDF*, 716 F.2d 915;

---

[5] EPA claims that it did not understand the "flaws" in Texas' SIP until after it received Texas' Motion for Stay on September 15, 2010, and its Letter to EPA of October 4, 2010, Att. H, but EPA never explains how these documents differed from the August 2 letter.  75 Fed. Reg. at 82,458.  Indeed, it states that the August 2 letter "provides the clearest articulation" of Texas' legal position.  75 Fed. Reg. at 82,447.

*Union of Concerned Scientists v. NRC*, 711 F.2d 370 (D.C. Cir. 1983) ("*UCS*"); *Air Transport Ass'n of Am. v. Dep't of Transp.*, 900 F.2d 369, 379 (D.C. Cir. 1990) ("*ATA*"), *remanded*, 498 U.S. 1077 (1991), *vacated as moot*, 933 F.2d 1043 (D.C.Cir.1991); *Nat' Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604 (D.C. Cir. 1980).  EPA's disregard of procedural regularities in issuing an immediately-effective interim final rule without notice and comment on December 30, to alleviate a supposed deficiency it had known about for nearly twenty years, and that was shared by other SIPs the Agency has shown no inclination to disapprove, is more egregious than these disapproved actions.

1.  In *ATA*, *UCS*, and *EDF*, the agencies' delay was measured in a period of months.  *See ATA*, 900 F.2d at 379; *EDF*, 716 F.2d at 921; *UCS*, 711 F.2d at 383. EPA has known for two decades that Texas' SIP does not update prospectively, and even if the Agency's denials are credited, it delayed for five months after it became aware of the "emergency" that it now claims emergency power to ameliorate.  EPA even referenced the alleged consequences of this position in a September 2 *Federal Register* notice.  *See* 75 Fed. Reg. 53,892 (Sept. 2, 2010) (proposed GHG SIP Call).

2.  In *UCS* and *EDF*, the Agency itself set the purported emergency deadline in other regulatory actions.  *UCS*, 711 F.2d at 380; *EDF*, 716 F.2d at 921.  In this action, EPA set an arbitrary deadline in another regulatory action, *see* 75 Fed. Reg. at 17,015, then attempted to exercise its emergency power to meet that deadline.

3.  In *Marshall*, the Court found that the Agency's delay was prejudicial because it excluded from the regulatory process those parties that will be most impacted by its

action.  628 F.2d at 622.  The State of Texas and its citizens, as well as its industries and public, have been prevented from participating in the rulemaking, despite that they will bear the brunt of EPA's action.

4.  In *Petry*, the Court approved a "a barebones period of thirty days for **comments** to be filed" where an agency was duty-bound to promulgate a complex regulation on an extremely expedited basis.  737 F.2d 1193, 1201 (D.C. Cir. 1984).  *See Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975) (approving ten-day comment period for good cause).  EPA failed to pursue expedited rulemaking, even though the Agency has known Texas' legal position for five months (if not years) and signed a rule on December 1 suggesting that EPA would act in this manner.

In sum, EPA "had a substantial period of time within which to propose regulations, the promulgation of which it knew was both necessary and forthcoming in the future," which this Court has repeatedly found bars reliance on the "good cause" exception.  *Block*, 655 F.2d at 1158 (D.C. Cir. 1994) (quotation omitted); *Asiana Airlines v. FAA*, 134 F.3d 393 (D.C. Cir. 1998)).

## C.  EPA's Claim That Notice And Comment Was Impracticable Is Baseless

Even if EPA's undue delay does not itself defeat the Agency's attempt to rely on the good cause exception, EPA's impracticability rationale is baseless.  Notice and comment rulemaking is "impracticable" "'when an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§ 553],' as when a safety investigation shows that a new safety rule must be put in place

immediately." *Util. Solid Waste v. EPA*, 236 F.3d 749 (D.C. Cir. 2001) (quoting U.S. Dep't of Justice, Atty. General's Manual on the Administrative Proc. Act 30-31 ("Manual").

The CAA's demands cannot, however, supersede the APA's notice-and-comment requirements where EPA can "reconcile[] the commands of the two acts." *New Jersey*, 626 F.2d at 1047. Thus, in *New Jersey*, the Court held that a **statutory deadline** in the CAA was not "good cause" to excuse EPA's promulgation of state air quality standards without notice and comment. *Id.* at 1047-48. "The mere existence of deadlines for agency action," the Court held, "does not in itself constitute good cause for a § 553(b)(B) exception." *Id.* at 1042 (quoting *U.S. Steel*, 595 F.2d at 213); *see also, e.g.*, *ATA*, 900 F.2d at 379; *Petry*, 737 F.2d at 1203. Instead, EPA's duty is to follow both the CAA and the APA: "If the admonition to construe the good-cause exception of section 553(b)(B) narrowly means anything, it means that we cannot condone its invocation where, as here, such a reconciliation is possible." *Id.* at 1047.

Congress has set no deadline for GHG PSD applicability, nor has it suggested that EPA need not comply with the APA. EPA could have reconciled its purported obligations under the CAA with the APA by noticing its proposed disapproval of Texas' SIP and FIP at any time beginning in early August, or by moving the January 2 deadline. *See Massachusetts*, 549 U.S. at 533 ("EPA no doubt has significant latitude as to the manner, timing, content, and coordination of its regulations. . . ."). EPA's failure to even attempt to do so is arbitrary and capricious, and contrary to law.

**D. EPA's Claim That Notice And Comment Was Contrary To The Public Interest Is Meritless**

EPA's claim that notice and comment is contrary to the public interest is merit-less. Notice and comment rulemaking is "contrary to the public interest" in "a situation in which the interest of the public would be defeated by any requirement of advance notice," such as "when announcement of a proposed rule would enable the sort of financial manipulation the rule sought to prevent." *Utility Solid Waste*, 236 F.3d at 754 (quoting Manual at 31). EPA's claim that notice and comment is contrary to the public interest because major stationary sources of pollution would otherwise be unable to obtain permits is incorrect. *Cinergy*, 623 F.3d at 458. Even if it were correct, however, there is nothing inherently problematic about submitting EPA's action to comment, nor does EPA claim there is. Instead, EPA's purported construction ban arises only because of the purported January 2 deadline, and its "public interest" claims are simply another way of making its discredited impracticability argument.[6] Finally, EPA's claims of emergency are belied by its decision not to "correct" its approval of numerous SIPs where, even under the Agency's view of the law, states will have no authority to issue PSD permits for greenhouse gases after January 2, 2011. *See* 75 Fed. Reg. at 77,705 (listing Connecticut, Nebraska, and parts of California,

---

[6] Any suggestion that EPA's *post hoc* notice, 75 Fed. Reg. at 82,365, excuses its failure to comply with the APA is frivolous. "Permitting the submission of views after the effective date is no substitute for the right of interested persons to make their views known to the agency in time to influence the rule making process in a meaningful way." *New Jersey*, 626 F.2d at 1049 (quoting *United States Steel Corp. v. EPA*, 595 F.2d 207, 214-15 (1979)). *Accord ATA*, 900 F.2d at 379-80; *Marshall*, 628 F.2d at 621-22.

Kentucky, and Nevada as having SIP submittal deadlines following January 2); 75 Fed. Reg. 82,246 (Dec. 30, 2010) (not imposing FIPs in these states).

## II. **TEXAS WILL SUFFER IRREPARABLE INJURY ABSENT A STAY**

Texas will be irreparably harmed as of January 2, 2011, if the Court does not stay the Partial SIP Disapproval and FIP Rule because the State's operation of its previously-approved SIP would be enjoined by EPA's action and EPA would assume the State's rightful role as permitting authority **on that date**.

In *New Motor Vehicles Board of California v. Orrin F. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist J., in chambers), the Supreme Court, through Circuit Justice Rehnquist, held that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (Quoted in *State Bd. of Optometry v. FTC*, 1989 WL 111595, *1 (D.C. Cir. 1989) (per curiam).) Courts around the country have repeatedly applied Justice Rehnquist's reasoning in *New Motor Vehicles Board. See also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, 92 (9th Cir. 2009); *St. Marie v. Ludeman*, 2010 WL 924420, *4 (D. Minn. Mar. 11, 2010); *District of Columbia v. Greene*, 806 A.2d 216, 223 (D.C. 2002).

Justice Rehnquist's reasoning applies with particular force here. The specific provision of Texas' SIP that EPA has disapproved is a duly-enacted regulation, pursuant to a delegation of authority from the Texas legislature that was created through a notice and comment process. Justice Rehnquist's holding that the harm occurs "any

18

time" state law is enjoined further supports Texas' claim that it is suffering irreparable harm now, not at some point in the future.  Because EPA's interim final rule would prevent Texas from "effectuating statutes enacted by representatives of its people," Texas will suffer irreparable injury absent a stay.  *See id.*

## III.  <u>A STAY WOULD SERVE THE PUBLIC INTEREST AND WILL NOT HARM THIRD PARTIES</u>

A stay of the Partial SIP Disapproval and FIP Rule would serve the public interest by enforcing Congress' announced policy of fostering accountable administrative action and the public's interest in accurate interpretation of the law.  Commensurately, a stay would not harm the public interest or any third parties.  Having delayed regulating GHGs for years, EPA cannot now claim a pressing need to do so, especially where it could have done so in short order.  *See, e.g.*, *Massachusetts*, 549 U.S. 497 (2007).  Contrary to EPA's claim, 75 Fed. Reg. at 82,444, no sources in Texas would be adversely affected by a stay.  *See Cinergy*, 623 F.3d at 458.

The APA's notice-and-comment requirements are Congress' solution to ensure good governance in administrative law, and are necessary "'if our present form of government is to endure.'"  *Am. Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C. Cir. 1980) (quoting S. Doc. No. 248, 79th Cong., 2d Sess. 244 (1946)).  Moreover, the public interest is served by the implementation, rather than the injunction, of duly-enacted state law.  *See Valeria G. v. Wilson*, 12 F.Supp.2d 1007 (N.D. Cal. 1998).

## **CONCLUSION**

EPA has improperly abandoned fundamental procedural regularities in its attempts to quash Texas' assertion of its rights under the CAA. Texas alone has been singled out for SIP disapproval based on its decision not to accede to EPA's request that it submit to the Agency and allow it to impose a FIP before EPA is statutorily permitted to do so. EPA's actions irreparably harm Texas by enjoining the State from enforcing its duly-enacted laws, with no commensurate countervailing public benefits for its actions. The court should stay this action pending review.

Dated: December 30, 2010                    Respectfully submitted,

                                            GREG ABBOTT
                                            Attorney General of Texas

                                            DANIEL T. HODGE
                                            First Assistant Attorney General

                                            BILL COBB
                                            Deputy Attorney General for Civil Litigation

                                            J. REED CLAY, JR.
                                            Special Assistant and Senior Counsel
                                                  to the Attorney General
                                            Office   of   the   Attorney   General
                                            of Texas
                                            P. O. Box 12548, Capitol Station
                                            Austin, Texas 78711-2548
                                            Telephone: (512) 936-2541
                                            Facsimile: (512) 936-0545
                                            Email: reed.clay@oag.state.tx.us

                                              /s/ David B. Rivkin, Jr.
                                            DAVID B. RIVKIN, JR.
                                            MARK W. DELAQUIL
                                            ANDREW M. GROSSMAN
                                            Baker & Hostetler LLP
                                            Washington Square, Suite 1100
                                            1050 Connecticut Avenue, N.W.
                                            Washington, D.C. 20036-5304
                                            Phone: 202.861.1500
                                            Facsimile: 202.861.1783
                                            Email:drivkin@bakerlaw.com

                                            CARLOS RAMOS-MROSOVSKY
                                            Baker & Hostetler LLP
                                            45 Rockefeller Plaza, 11th Floor
                                            New York, NY 10111 Avenue
                                            Phone: 212.589.4658
                                            Facsimile: 212.589.4201

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2010, I provided for service of a copy of the foregoing Motion For Stay by hand, on this day, to the following:

United States Environmental
Protection Agency
Office of the Administrator
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

United States Environmental
Protection Agency
Office of the General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jack Lipshultz
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

Perry Rosen
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

By: _____
    /s/ Andrew M. Grossman
    Andrew M. Grossman